# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KELLY YOUNG, | : | CIVIL ACTION |
|---|---|---|
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 11-5518 |
| | : | |
| J.B. HUNT TRANSPORT, INC., | : | |
| Defendant. | : | |

## **M E M O R A N D U M**

**STENGEL, J.**                                                                                         February 13, 2013

Plaintiff Kelly Young filed this employment discrimination against her employer, J.B. Hunt Transport, Inc. (J.B. Hunt). She claims J.B. Hunt retaliated against her in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951, *et seq.*[1] J.B. Hunt moved for summary judgment. For the following reasons, I will grant J.B. Hunt's motion.

## I.   BACKGROUND[2]

J.B. Hunt has employed Young as a truck driver since August 2008. Young Dep. at 27:13–29:13. In March or April 2010, one of Young's co-workers made a motion toward Young simulating oral sex. Young did not report the incident at that time. On May 17, 2010, the same co-worker called Young a "fucking bitch" in front of other co-workers and a customer, and told the customer "don't let her blow you, she will spit it back in your face." Young reported both incidents to her supervisor that same day. Doc.

---
[1] Young abandoned her sexual harassment claim, Compl. ¶¶ 49-52, in opposition to J.B. Hunt's motion, Doc. No. 23 at 2 n.1, leaving only her retaliation claim.
[2] The facts in this section are undisputed unless otherwise noted.

No. 22 ¶¶ 20-21. J.B. Hunt promptly investigated Young's claims and took appropriate action against the accused co-worker. Id. ¶ 23.

Young has been involved in several workplace and safety related incidents during the course of her employment with J.B. Hunt. On March 23, 2010; November 26, 2010; and February 17, 2011, Young's tractor recorded "hard brake events." Young was given additional coaching after each event. Id. ¶¶ 19, 30, 31. On May 29, 2010, Young was observed "veering" toward the shoulder of the road and cleaning her mirrors and windows while driving. She was required to complete safety training. Id. ¶ 24.[3] On June 21, 2010, Young was involved in a collision. The following day, Young was suspended without pay for three days and placed on probation for three months. Id. ¶ 25.[4] On October 20, 2010, Young allegedly violated J.B. Hunt's conflict-of-interest policy by discussing on company property the jewelry business she was involved in with a co-worker. Id. ¶ 28.[5] On October 26, 2010, Young was cited by the Connecticut Department of Transportation for having faulty rear tail lights. She was required to complete training on equipment inspections. Id. ¶ 29. On March 3, 2011, Young was involved in a "safety incident" while making a delivery. Three door hinges broke when a bungee cord snapped, allowing a rear door to swing loose and strike the delivery dock. That same day, Young was suspended without pay for one day, placed on probation for six months, and cautioned to be "more aware of wind conditions and [to] verify the

---

[3] Young does not deny she engaged in this conduct; she merely stresses that J.B. Hunt "*chose* to subject her to a 'safety observation.'" Doc. No. 24 ¶ 24.
[4] Young does not deny she was involved in a collision; rather, she claims it was not "preventable," as J.B. Hunt concluded. Id. ¶ 25.
[5] Young claims she "was given specific permission to conduct the activity in question on company property." Id. ¶ 28.

condition of the bungee cord when securing the trailer door." Id. ¶ 32.[6] Finally, on March 10, 2011, Young was observed traveling at speeds too fast for weather conditions, failing to maintain the proper following distance behind other vehicles, and failing to safely change lanes. She was required to complete safety training. Id. ¶ 33.[7]

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

A party moving for summary judgment always bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Summary judgment is therefore appropriate when the non-moving party

---

[6] Young does not deny this incident occurred; rather, she claims that an inspection of the cord would not have revealed it was faulty. Id. ¶ 32.
[7] Again, Young does not deny she engaged in this conduct; rather, she contends this "incident itself should also be suspect as it was also based on an 'observation.'" Id. ¶ 32.

3

fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

Under Rule 56, the Court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255. The Court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252. The nonmoving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather, must present clear evidence from which a jury can reasonably find in its favor. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## III. DISCUSSION

Courts analyze retaliation claims under Title VII and the PHRA pursuant to the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006); Gomez v. Allegheny Health Services, Inc., 71 F.3d 1079, 1084 (3d Cir. 1995) ("The [PHRA] is construed consistently with interpretations of Title VII."). To survive summary judgment, a plaintiff must establish a prima facie case of retaliation by showing (1) a protected activity, (2) a materially adverse action, and (3) a causal link between the protected activity and the materially adverse action. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). If the plaintiff makes out a prima facie case, the burden of

4

production "shifts to the employer to advance a legitimate, non-retaliatory reason" for its conduct. Id. If the employer advances such a reason, the burden of production shifts back to the plaintiff "to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id. at 501. The burden of persuasion remains at all times with the plaintiff. Id.

### A. Prima Facie Case

#### 1. Protected Activity

Title VII protects employees who oppose discriminatory employment practices. 42 U.S.C. § 2000e-3(a). A plaintiff is not required to show that the practice he opposed was actually unlawful; instead, the plaintiff must have held "an objectively reasonable belief, in good faith, that the activity that they oppose[d] is unlawful under Title VII." Moore, 461 F.3d at 341. An employee's oral or written complaint to a manager about a specific unlawful practice is protected activity. Abramson v. William Paterson College, 260 F.3d 265, 286–87 (3d Cir. 2001).

J.B. Hunt does not seriously dispute that Young's oral and written complaints to her supervisors on May 17, 2010, were protected activities. It was objectively reasonable for Young to believe her co-worker's gestures and statements were unlawful under Title VII, see Magyar v. Saint Joseph Regional Medical Center, 544 F.3d 766, 772 (7th Cir. 2008), and there is no evidence that Young made her complaints to management in bad faith. Young has therefore satisfied the first prong of her prima facie case.

## 2. Materially Adverse Action

An action is materially adverse if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citations and internal quotation marks omitted). This test for material adversity is flexible and focuses on the particular circumstances of the case rather than specific prohibited acts. Id. at 69.

J.B. Hunt contends that none of its challenged actions were materially adverse. Doc. No. 21 at 22. Young pursues only three in response: the requirement that she complete safety training following the May 29, 2010, observation review; her unpaid, three-day suspension and three-month probation following the June 21, 2010, collision; and her unpaid, one-day suspension and six-month probation following the March 3, 2011, safety incident.[8] Doc. No. 23 at 6.

As for the required safety training, Young offers no analysis, merely claiming the issue is one for the jury. I disagree. Young does not identify, and the record does not reveal, any harm or injury resulting from the training. Morrison v. Carpenter Tech. Corp., 193 F. App'x 148, 154 (3d Cir. 2006). Young suffered no economic loss as a result of the training, Young Dep. at 86:17-19, and to the limited extent the training was explored during discovery, it is clear Young did not find the training materially adverse, id. at 81:21-24 ("[T]rainings do not hurt anyone, whether you have seen them one or ten

---

[8] In her brief, Young appears to confuse the March 10, 2011, observation review, for which she was required to complete safety training, and the March 3, 2011, safety incident, for which she was suspended and placed on probation. Doc. No. 23 at 6. Because the March 3 incident is the more serious of the two, I assume that is what Young refers to. In any event, Young's required safety training was not a materially adverse action, as I will explain.

6

times, you will still learn something. I did not oppose that."). A reasonable employee under the circumstances would not either. E.g., Sifuentes v. United Parcel Serv., Inc., 10-2178-RDR, 2012 WL 5907385, at *12 (D. Kan. Nov. 26, 2012) (holding that required safety training for truck driver following work-related accident or injury was not a materially adverse action).

By contrast, Young's unpaid suspensions and periods of probation probably were materially adverse. Prise v. Alderwoods Group, Inc., CIV.A. 06-1470, 2011 WL 3047629, at *8 (W.D. Pa. July 25, 2011) ("It is clear that an unpaid suspension—under most circumstances—rises to the level of a materially adverse employment action."); see also Seeney v. Elwyn, Inc., 409 F. App'x 570, 574 (3d Cir. 2011) (holding that "a three-day suspension without pay may be considered an adverse employment action" for the purpose of a Title VII disparate treatment claim). I therefore move to the third prong of Young's prima facie case.

### 3. Causal Link

A plaintiff can show a causal link between his protected activity and a materially adverse action in three ways: temporal proximity, a pattern of antagonism following protected conduct, and the proffered evidence as a whole. Kachmar v. SunGard Data Systems, Inc., 109 F.3d 173, 177 (3d Cir. 1997). Young attempts to show causation all three ways.

"[T]emporal proximity merely provides an evidentiary basis from which an inference [of causation] can be drawn." Id. Since temporal proximity is a poor proxy for causation, temporal proximity alone is sufficient only where it is "unusually suggestive of

7

retaliatory motive." Williams v. Philadelphia Hous. Auth. Police Dept., 380 F.3d 751, 760 (3d Cir. 2004) (citations omitted). Here, the period of time between Young's May 17, 2010, complaint and her suspension and probation on June 22, 2010, was not unusually suggestive. Thirty-six days passed between these events. Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (finding three weeks between protected activity and retaliatory action not unusually suggestive). It follows that the period of time between Young's May 17, 2010, complaint and her suspension and probation on March 3, 2011, was also not unusually suggestive.

Young adduces no direct evidence of antagonism between her protected activity and her suspensions and probations. She attempts to show a pattern circumstantially by pointing to the several instances of discipline following her May 17, 2010, complaint. Repeated discipline for trivial matters and unusually close supervision may be sufficient to establish a pattern of antagonism and infer causation. Robinson v. SEPTA, 982 F.2d 892, 895-96 (3d Cir. 1993). Between May 17, 2010, and June 22, 2010, the date of her first suspension and probation, Young's performance was corrected only once, on May 29, following an observation review. One instance of discipline is insufficient to show a pattern of anything. Between May 17, 2010, and March 3, 2011, the date of her second suspension and probation, Young was disciplined six times. Four of these actions were in response to a collision, a regulatory citation, and two computer-triggered hard brake events. Because these incidents originated purely outside J.B. Hunt's control, there is no basis for concluding its responsive actions were antagonistic. Cf. id. at 895 ("[Following the plaintiff's complaint, his supervisors] began a pattern of harassing [him] by

repeatedly disciplining him for minor matters, miscalculating his points for absences from work, and generally trying to provoke [him] to insubordination."). That leaves Young's alleged conflict-of-interest violation and the first observation review. Two instances of discipline over the course of nine months hardly constitutes a "constant barrage of written and verbal warnings . . . and disciplinary action" sufficient to demonstrate a pattern of antagonism. Id.

As for the evidence as a whole, Young disputes her level of culpability and the purported excessiveness of her discipline. Doc. No. 23 at 8-9. This is a non-starter. Young does not dispute the underlying conduct giving rise to each of J.B. Hunt's actions. As for the observation reviews on May 29, 2010, and March 10, 2011, she appears to contend she was targeted, but she does not deny she engaged in the conduct for which she was required to undergo safety training. Doc. No. 24 ¶¶ 24, 33. As for the collision on June 21, 2010, and the safety incident on March 3, 2011, she claims they weren't preventable. Id. ¶¶ 25, 32. As for the October 20, 2010, conflict-of-interest violation, she claims she had permission to conduct the activity in question. Id. ¶ 28. From all this, Young contends the discipline she received was "absurd," "suspicious," and "questionable." Doc. No. 23 at 8-9. However, Young has adduced no evidence beyond her own suspicion, Young Dep. at 73:22-74:1, 88:20-89:3, that J.B. Hunt's actions were a departure from its "usual mode of operation," Fuentes v. Perskie, 32 F.3d 759, 765 n.8 (3d Cir. 1994). Young's argument therefore only serves to reinforce that J.B. Hunt responded consistently to workplace and safety-related incidents Young was unquestionably involved in and that J.B. Hunt was not motivated by her complaint.

For these reasons, Young has failed to make out a prima facie case of retaliation and I will grant J.B. Hunt's motion.

### B. Legitimate, Non-Discriminatory Reasons/Pretext

Even if Young could make out a prima facie case, I note briefly that J.B. Hunt has produced a legitimate, non-discriminatory reason for every challenged action and that Young has not shown pretext. Fuentes, 32 F.3d at 764. Young advances no evidence of pretext beyond that raised in her prima facie case, and for the same reasons, I am not persuaded. Garabedian v. Lone Star Steakhouse & Saloon, CIV.A. 06-3115, 2007 WL 1795677, at *3 (E.D. Pa. June 20, 2007) ("[T]he tests for prima facie casual connection and pretext overlap.") (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 286 (3d Cir. 2000)). Young cannot survive summary judgment merely by attacking the "strength of 'cause'" for J.B. Hunt's actions. Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Fuentes, 32 F.3d at 765. Because that is all she does, her claim fails.

## IV. CONCLUSION

For the foregoing reasons, J.B. Hunt's motion is granted.

An appropriate order follows.